# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| _____ | ) |
| | ) |
| **SODEXO, INC.,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )   **Case No. 18-cv-12036-DJC** |
| | ) |
| | ) |
| **MELISSA JORDAN,** | ) |
| | ) |
| **Defendant.** | ) |
| | ) |
| | ) |
| _____) | |

## MEMORANDUM AND ORDER

**CASPER, J.**                                                                                              **May 5, 2020**

## I.     Introduction

Plaintiff Sodexo, Inc. ("Sodexo") has filed this lawsuit against Defendant Melissa Jordan ("Jordan") alleging a single count of breach of contract in connection with Jordan's employment with Restaurant Associates.  D. 1.  Sodexo has moved for summary judgment as to its breach of contract claim on its two theories for recovery:  breach of the non-compete provision and breach the confidentiality provision, D. 27, and Jordan has cross-moved for summary judgment, D. 30. For the reasons stated below, the Court ALLOWS IN PART and DENIES IN PART Jordan's motion, D. 30, and DENIES Sodexo's motion, D. 27.  Jordan's motion is ALLOWED as to the alleged breach of the noncompete provision and alleged breaches of the confidentiality provision except as to the allegations that Jordan violated the confidentiality provision by identifying Sodexo "must win" and "in trouble accounts" in her subsequent employment with Restaurant Associates. Accordingly, the only remaining ground for the breach of contract claim for trial is whether Jordan

1

breached the confidentiality provision when she identified Sodexo's "must win" and "in trouble accounts."

## II.     Standard of Review

The Court grants summary judgment where there is no genuine dispute as to any material fact and the undisputed facts demonstrate that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  "A fact is material if it carries with it the potential to affect the outcome of the suit under applicable law."  Santiago–Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000).  The movant bears the burden of demonstrating the absence of a genuine issue of material fact.  Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000); see Celotex v. Catrett, 477 U.S. 317, 323 (1986).  If the movant meets its burden, the non-moving party may not rest on the allegations or denials in its pleadings, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986), but must come forward with specific admissible facts showing that there is a genuine issue for trial.  Borges ex rel. S.M.B.W. v. Serrano–Isern, 605 F.3d 1, 5 (1st Cir. 2010). The Court "view[s] the record in the light most favorable to the nonmovant, drawing reasonable inferences in his favor."  Noonan v. Staples, Inc., 556 F.3d 20, 25 (1st Cir. 2009).

## III.    Factual Background

The following facts are undisputed unless otherwise noted.  Sodexo is one of the world's largest companies providing a variety of services including food, facilities management, workplace & technical, benefits & rewards and personal & home services.  D. 32 ¶ 1; D. 35 ¶ 1.  The industries Sodexo services are also diverse:  according to its website, Sodexo services clients across several divisions, including "Business & Industry, Defense, Energy & Resources, Government, Healthcare, Schools, Seniors, Sports & Leisure and Universities."  D. 32 ¶ 3; D. 35 ¶ 3.

A. __Jordan's Employment with Sodexo__

Jordan began working for Sodexo in August 2000 in Sodexo's Corporate Services division. D. 32 ¶ 5; D. 35 ¶ 5. Jordan worked in the Corporate Services division until 2012 when she transferred to Sodexo's Universities and Colleges division where she worked in sales. D. 32 ¶¶ 5-6; D. 35 ¶¶ 5-6. Jordan applied for a new position with the Universities and Colleges division and, in June 2016, was offered a job as the Vice President of Business Development within that division. D. 32 ¶ 8; D. 35 ¶ 8. As part of this new position, Jordan executed the Sodexo, Inc. Noncompetitive Agreement, Confidentiality Agreement and Non-Solicitation Agreement for Grades 12 & 13 (the "Agreement") on June 17, 2016. D. 32 ¶ 9; D. 35 ¶ 9; D. 33-3.

Pursuant to the Agreement Jordan agreed that "during the term of [her] employment by [Sodexo] and for a period of nine (9) months after termination thereof, . . . [Jordan] will not compete with the Company . . . ." D. 33-3 at 3. Specifically, the Agreement prohibits "being employed by . . . any corporation, firm or other entity or person engaged in the Management Services Business including, without limitation, competitors, ARAMARCK (ServiceMaster), Bon Appetit, Compass Group, Crothall, Encore, Guckenheimer, Johnson Control, ISS, or Morrisons . . . ." D. 33-3 at 3 (emphasis added). The Agreement defines the "Management Services Business" as:

> the contract food and facilities management business including the installation, ownership, control, management and/or operation of governmental, institutional, hospital, seniors, school, college, industrial, commercial and public food supply and food service systems, procurement services, and cafeterias, including manually operated restaurants, cafeterias, public and private clubs, snack bars and other food and beverage dispensing and dining facilities, and automatic cafeterias and . . . facilities management services including housekeeping, linen management, groundskeeping, construction, retail shop operation, maintenance, engineering, energy management and other facilities services at governmental, institutional, hospital, seniors, school, college, industrial, commercial and public systems and facilities . . . .

D. 33-3 at 2.  The Agreement also includes a nondisclosure of confidential information provision where Jordan agreed "not to divulge any confidential information concerning [Sodexo's] business to any person at any time, whether during or after [her] employment with [Sodexo] except as required by [Sodexo]."  D. 33-3 at 4.  The Agreement defines confidential information as "all information concerning the Company's business, including financial and business information as well as technical information, . . . except information which [Jordan] know[s] the company does not consider confidential or information which [Jordan has] been duly authorized to divulge to the general public."  D. 33-3 at 4.  The Agreement includes a provision that provides "it shall be subject to the laws of Maryland. . . ."  D. 33-3 at 4.

As Vice President of Business Development in the Universities and Colleges division, Jordan focused on Sodexo's larger university and college clientele, D. 32 ¶ 10; D. 35 ¶ 10, and was responsible for developing and maintaining client and customer relationships for Sodexo in this sphere.  D. 29 ¶ 10; D. 37 ¶ 10.  Pursuant to her employment with Sodexo, Jordan had access to, and knowledge of, Sodexo's long-term strategic planning as well as knowledge of large accounts and business in the Universities and Colleges division.  D. 29 ¶ 15; D. 37 ¶ 15.  Jordan continued working in her role in Sodexo's Universities and Colleges division until her resignation on June 29, 2018.  D. 32 ¶ 14; D. 35 ¶ 14.

### B.  Jordan Explores Employment Opportunities Outside of Sodexo

In early 2018, Jordan began exploring employment opportunities outside Sodexo and began speaking with Mike Gaebel ("Gaebel"), the Senior Vice President of Corporate Services at Compass Group USA, Inc. ("Compass") in March 2018 about a position at Restaurant Associates. D. 32 ¶¶ 11-12; D. 35 ¶¶ 11-12; D. 29 ¶¶ 22, 26-27; D. 37 ¶¶ 22, 26-27.  Restaurant Associates is an affiliate of Compass.  D. 32 ¶ 12; D. 35 ¶ 12.  Sodexo and Jordan disagree on the extent to

which Restaurant Associates and Sodexo compete but agree that Compass and Sodexo are competitors generally and Restaurant Associates and Sodexo are competitors in at least one field. D. 29 ¶ 23; D. 37 ¶ 23.  At some point in the course of her conversations with Gaebel, Jordan shared a copy of the Agreement with Compass.  D. 29 ¶ 28; D. 37 ¶ 28.

On May 22, 2018, Jordan was offered a position at Restaurant Associates as Director of Regional Sales in Restaurant Associates' Business & Industry division.   D. 32 ¶ 13; D. 35 ¶ 13. On May 24, 2018, Jordan accepted the position with Restaurant Associates, D. 32 ¶ 13; D. 35 ¶ 13, but continued working in her role at Sodexo until her resignation on June 29, 2018, D. 32 ¶ 14; D. 35 ¶ 14.  Jordan represented to Gaebel that she planned to start her employment at Restaurant Associates in August but maintained to her colleagues at Sodexo and during her exit interview that she had no future employment plans.  D. 29 ¶¶ 34-35, 37-39; D. 37 ¶¶ 34-35, 37-39.

### C.     Retention of Sodexo Information

After leaving Sodexo, Jordan retained in her possession Sodexo-issued thumb drives, external storage devices and hard-copy documents containing Sodexo information.  D. 29 ¶ 41; D. 37 ¶ 41; D. 32 ¶ 29; D. 35 ¶ 29.  The materials Jordan retained in her possession included copies of Sodexo's past proposals to university clients, marketing analytics reports noting Sodexo's current and target accounts, account-related spreadsheets noting profit and revenue amounts and reports containing Sodexo's probability assessments and expected revenue from target accounts. D. 29 ¶ 42; D. 37 ¶ 42.  Since discovering Jordan's retention of this information during discovery for this litigation, a forensic expert purged all Sodexo information retained in Jordan's devices so that no Sodexo information could be accessed.  D. 32 ¶ 30; D. 35 ¶ 30.

D.      **Work at Restaurant Associates**

On August 6, 2018, Jordan began working at Restaurant Associates as a Regional Sales Director with a focus on new business development.  D. 29 ¶ 44; D. 37 ¶ 44.  In her role at Restaurant Associates, Jordan works as a salesperson in the Boston market, and solicits and pursues new business and industry and corporate service opportunities in the Northeast region.  D. 29 ¶ 45; D. 37 ¶ 45.  The parties dispute whether, Jordan competes with her previous employment sector at Sodexo—the Universities and Colleges Division, in Jordan's role at Restaurant Associates.  D. 29 ¶ 46; D. 37 ¶ 46; D. 32 ¶ 19; D. 35 ¶ 19.

Through her work at Restaurant Associates, Jordan had opportunity to and did discuss her time and work with Sodexo.  D. 29 ¶¶ 54-58; D. 37 ¶¶ 54-58.  While the parties dispute whether the information Jordan communicated about Sodexo constitutes confidential information, D. 29 ¶¶ 54-58; D. 37 ¶¶ 54-58, they do not dispute that she discussed this information.  Specifically, Jordan discussed several account Sodexo considered "must win" and "in trouble" accounts, D. 29 ¶ 54; D. 37 ¶ 54, and a special project pitch she had been involved with for Sodexo, D. 29 ¶ 57; D. 37 ¶ 57.

IV.    **Procedural History**

Sodexo instituted this action on September 28, 2018, D. 1, and the parties proceeded with discovery.  The Court heard the parties on the pending motions and took these matters under advisement.  D. 46.

V.     **Discussion**

A.      **Choice of Law**

In a diversity action, the choice-of-law rules that apply are those of the forum state, in this case, Massachusetts.  Klaxon Co. v. Stentor Elec. Mfg. Co. Inc., 313 U.S. 487, 496 (1941).  As a

general rule, Massachusetts courts will give effect to a contractual choice-of-law clause.  See, e.g., Morris v. Watsco, Inc., 385 Mass. 672, 674 (1982) (explaining that "Massachusetts law has recognized, within reason, the right of the parties to a transaction to select the law governing their relationship").  Here, the Agreement includes a provision that provides "it shall be subject to the laws of Maryland," D. 33-3 at 4, and the parties agree Maryland law should apply.  D. 28 at 17; D. 31 at 3.  "Where both parties agree on the proper substantive law to be applied, there is generally no need to engage in further choice-of-law analysis."  Scottsdale Ins. Co. v. United Rentals (N. Am.), Inc., 152 F. Supp. 3d 15, 19 (D. Mass. 2015) (citing Williams v. Astra USA, Inc., 68 F. Supp. 2d 29, 36 (D. Mass. 1999)).  Although Maryland law, may not in fact be the correct choice under Massachusetts choice of law principals, see Sodexo Operations, LLC. v. Abbe, 382 F. Supp. 3d 162, 164 (D. Mass. 2019) (holding that Massachusetts law governs despite a similar Maryland choice of law provision), because the parties do not dispute the applicability of Maryland law, this Court does not engage in this analysis and instead holds the parties to their plausible choice of Maryland law, see Lluberes v. Uncommon Prods., LLC, 663 F.3d 6, 23 (1st Cir. 2011) (explaining that "[w]hen the parties agree on the substantive law that should govern, 'we may hold the parties to their plausible choice of law, whether or not that choice is correct'" (quoting Perry v. Blum, 629 F.3d 1, 8 (1st Cir. 2010); see Moores v. Greenberg, 834 F.2d 1105, 1107 n.2 (1st Cir. 1987) (noting that when the parties agree on what substantive law controls, a federal court "ordinarily should" accept their agreement)).  Accordingly, this Court applies Maryland law.

### B.   The Restrictive Covenants

Sodexo and Jordan have each moved for summary judgment on the single breach of contract count.  D. 27; D. 30.  Sodexo's claim for breach of contract relies upon two distinct

theories of breach:  1) that Jordan breached the non-compete provision of the Agreement and 2) that Jordan breached the non-disclosure provision of the Agreement.[1]

### 1.    *Non-Compete Provision*

The Agreement prohibits Jordan from "compet[ing] with the Company by directly or indirectly . . . being employed by or being a contractor to . . . any corporation, firm or other entity or person engaged in the Management Service Business."  D. 33-3 at 3.  Jordan challenges the validity of this provision by asserting it is overly broad.  D. 31 at 3.  Maryland law enumerates "four requirements that must be met for a restrictive covenant to be enforceable:  (1) the employer must have a legally protected interest, (2) the restrictive covenant must be no wider in scope and duration than is reasonably necessary to protect the employer's interest, (3) the covenant cannot impose an undue hardship on the employee, and (4) the covenant cannot violate public policy."  Deutsche Post Glob. Mail, Ltd. v. Conrad, 116 F. App'x 435, 438 (4th Cir. 2004).  The hallmark of this inquiry is that of reasonableness:  "[t]he test used for a restrictive covenant in an employment contract is 'whether the particular restraint is reasonable on the specific facts.'"  Intelus Corp. v. Barton, 7 F. Supp. 2d 635, 641 (D. Md. 1998) (quoting Ruhl v. F. A. Bartlett Tree Expert Co., 225 A.2d 288, 291 (Md. 1967)).

### a)    Legally Protected Interest

Jordan asserts that Sodexo has no legally protected interest to justify the non-compete provision in this case.  D. 31 at 4-7.  Specifically, Jordan argues that Sodexo's protectable business

---

[1] Jordan also challenges the validity of the customer and employee non-solicitation provision, D. 31 at 9-11, but Sodexo "has not and does not allege that [Jordan] breached either provision," D. 28 at 9 n.1, and, therefore, this Court does not address the validity of these provisions.

interest does not extend to employment with a competitor or protection from enhanced competition.[2] D. 31 at 4-6.

Preventing or destroying competition is not a legally protectable interest under Maryland law.  MCS Servs., Inc. v. Jones, CV No. WMN-10-1042, 2010 WL 3895380, at *3 (D. Md. Oct. 1, 2010) (stating that the "mere protection from enhanced competition is not a protectable interest"); Bindagraphics, Inc. v. Fox Grp., Inc., 377 F. Supp. 3d 565, 572 (D. Md. 2019) (same). To that end, a restrictive covenant is "not enforceable if its sole purpose is to prevent a company's employees from joining another company, thereby making the new company a more efficient competitor."  Premier Rides, Inc. v. Stepanian, CV No. MJG-17-3443, 2018 WL 1035771, at *6 (D. Md. Feb. 23, 2018); Seneca One Fin., Inc. v. Bloshuk, 214 F. Supp. 3d 457, 462 (D. Md. 2016) (explaining that restrictive covenants designed to prevent competition do not serve a legally protectable interest).

Employers, however, do "have a legally protected interest in preventing departing employees from taking with them the customer goodwill they helped to create for the employer." Deutsche Post, 116 F. App'x at 438 (citing Silver v. Goldberger, 188 A.2d 155, 158 (Md. 1963)). Businesses further have a "protectable interest in preventing an employee from using the contacts established during employment to pirate the employer's customers."  Bindagraphics, Inc., 377 F. Supp. 3d at 571-72 (quoting Holloway v. Faw, Casson & Co., 572 A.2d 510, 513-14 (1990)) (quotations omitted).  Correspondingly, Maryland courts note that "[r]estrictive covenants almost always serve a legitimate employer interest when they restrict former salespersons who serviced,

---

[2] Jordan also asserts that inevitable disclosure is not a protectable business interest, D. 31 at 6, but because Sodexo does not "not rely upon the inevitable disclosure doctrine," D. 34 at 8, this Court does not address Jordan's contention here.

solicited, and were in constant contact with customers." <u>Bindagraphics, Inc.</u>, 377 F. Supp. 3d at 572 (quoting <u>Deutsche Post</u>, 116 F. App'x at 438) (quotations omitted).

The case is no different here.  Jordan worked as Vice President of Business Development within Sodexo's Universities and Colleges division, D. 32 ¶ 8; D. 35 ¶ 8, and appeared to be active in the solicitation and service of customers, D. 29 ¶ 10; D. 37 ¶ 10.  Her work in this position involved some high revenue accounts generating more than $10 million of revenue annually for Sodexo, D. 29 ¶ 11; D. 37 ¶ 11, and she appears to have been a sales asset to Sodexo in this capacity.  After her departure, Lorna Donatone, a Sodexo employee, lamented that she "was one of the best sales people and had been quite successful."  D. 33-7.  Given Jordan's active and valuable work for Sodexo in selling and retaining high value accounts, Sodexo had a legally protectable business interest in the goodwill Jordan generated during the course of her work for the University and College division in high value accounts.  <u>Bindagraphics, Inc.</u>, 377 F. Supp. 3d at 572 (explaining that because the employee's "employment duties as a sales representative were inextricably tied to his relationships with [customers]" and "cultivating such relationships was part of his job description,"  it was "clear" that the employer had a legally protected interest in the goodwill the employee built).

b)      <u>Reasonable Scope</u>

For the scope of the non-compete to be reasonable, it must be proportionally tethered to the legally protectable interest. <u>Premier Rides, Inc.</u>, 2018 WL 1035771, at *6 (explaining that "the scope of the proscribed activity must be properly bounded; an overbroad covenant that simply tries to prevent any kind of competition by the employee is not legally enforceable" citing <u>Deutsche Post</u>, 116 F. App'x at 438).  While, as this Court explained above, Sodexo has a legally protectable

10

interest in the protection and retention of goodwill, here the non-compete provision is unreasonable in scope to this interest.

The non-compete provision at issue here restricts Jordan from "being employed by or being a contractor to, or having any interest in any corporation, firm or other entity or person engaged in the Management Services Business . . . ." D. 33-3 at 3.  Jordan argues that this restriction is a broad prohibition on employment by any of Sodexo's competitors.  D. 31 at 8-9.  Sodexo asserts that the provision should be read more narrowly.  D. 34 at 11.  Specifically, Sodexo asserts that the non-compete provision "is limited to the particular subset of Sodexo's business in which [Jordan] worked" because the Agreement clearly and repeatedly references Jordan's responsibilities, grade level and title.  D. 34 at 11.  Counsel for Sodexo has argued that the non-compete provision cannot possibly be so broad as to cover an instance where, as Jordan posits, she worked in a position largely unrelated to that of her position at Sodexo: for example, if Jordan worked as a janitor at a cafeteria.

Although Sodexo may well have not attempted to enforce the non-compete agreement had Jordan taken employment as a janitor at a school cafeteria instead of as a Sales Director at Compass, the potential application of the restrictive covenant to both instances demonstrates its overbreadth.  The Agreement is clearly marked for Jordan "VP Business Development" and specifically notes that it is for "Grades 12 & 13 – Staff" but there is no suggestion that the non-compete is limited to Jordan's role and employment sub-division.  See D. 33-3.  The non-compete provision precludes employment in the Management Service Business, broadly defined as "the installation, ownership, control management and/or operation of . . . food supply and food service systems and cafeterias . . . [and] facilities management services including housekeeping, linen management, groundskeeping, construction, retail shop operation, maintenance, engineering,

energy, management and other facilities services . . . ."  D. 33-3 at 2.  Sodexo agrees that this is the operative definition of Management Service Business.  D. 28 at 8-9.  Under this definition, the Agreement precludes this work in a variety of industries including "governmental, institutional, hospital, seniors, school, college, industrial, commercial and public. . . ."  D. 33-3 at 2.  In short, despite Sodexo's contentions that the Agreement is narrowly defined, the definition of work the Agreement precludes includes work for any business engaged in any capacity of the food and facilities management business in nearly any industry.  See D. 33-3 at 2.  Such a bar would go far beyond what is reasonably necessary to protect the goodwill Jordan built as a Sodexo employee.

Courts applying Maryland law have found similar non-compete covenants to be overbroad. For example, in Cytimmune Scis., Inc., the court invalidated a non-compete agreement that prevented a former employee who worked in the nano technology space from working at "or even investing in" "any company researching nanotechnology" or contemplating producing or developing  technology similar to or "based on" the kind of technology being produced by the employer company.  Cytimmune Scis., Inc.v. Paciotti, No. CV PWG-16-1010, 2016 WL 4699417, at *3-*4 (D. Md. Sept. 8, 2016).  There, the court reasoned that while the geographic scope and temporal term of the non-compete agreement were both reasonable, the provision was nonetheless unenforceable because it prevented the former employee from providing services to, investing in or acting as an advisor to any of the employer's competitors and was therefore overly broad.  Id. Similarly, in MCS Servs., the court found a restriction overbroad where it prevented the former employee, a manager and sales representative, "from working for any competitor, regardless of whether his new responsibilities seek to exploit [the employer's] goodwill."  MCS Servs., 2010 WL 3895380, at *4. There, the court observed that "[t]aken literally, the covenant would prevent [the defendant] from working in any capacity for a competitor, even if his responsibilities were

wholly unrelated to the business of high speed printer maintenance; it would even prevent him from working in [a competitor's] mailroom" and went on to explain that the provision was therefore overbroad and unenforceable as a matter of law.  Id. at *3-*4.

Here, the Agreement would similarly preclude Jordan from working in industries unrelated to her employment at Sodexo (such as facilities management services including linen management, groundskeeping, construction and retail shop operation, D. 33-3 at 2) and for classes of customers that Jordan had no involvement with during her time at Sodexo (such as governmental, institutional and hospital customers, D. 33-3 at 2).  Under the literal terms of the Agreement, Jordan would be precluded from working in a hospital giftshop or in a government facility doing groundskeeping. Such a bar would go far beyond what is reasonably necessary to protect the goodwill Jordan built as a Sodexo employee in the Universities and Colleges division.

Moreover, the provision in the Agreement focuses on the nature of the competitor rather than the work performed by Jordan:  a focus disfavored by Maryland law because provisions that focus on the competitor are not tailored to the company's legitimate interest in safeguarding customer goodwill.  Paul v. ImpactOffice LLC, No. CV TDC-16-2686, 2017 WL 2462492, at *5 (D. Md. June 6, 2017) (where the court noted that the provision at issue "focuse[d] on the nature of the competitor rather than the work performed by the former employee. . . . [and held that] [s]uch a provision does not reflect a narrowly tailored approach to safeguarding customer goodwill").  The Agreement precludes Jordan from being employed by, contracting with or having an interest in any firm engaged in the Management Service Industry.  D. 33-3 at 3.  Such a provision prohibits Jordan from working in any capacity in the management service industry regardless of how it relates to her prior work experience.  Provisions like the one at issue here— those that focus on barring work for a competitor rather than the work performed by the

employee—are understood "as a general hindrance to competition, an unprotected interest" under Maryland law.  ImpactOffice, LLC, 2016 WL 8672916, at *5; see Seneca One Fin., Inc., 2016 WL 5851626, at *3; Medispec, Ltd. v. Chouinard, 133 F. Supp. 3d 771, 775 (D. Md. 2015). Accordingly, the non-compete provision is unenforceable as it is unreasonable in scope and serves as a hinderance on competition as opposed to serving Sodexo's legitimate interest in protecting customer goodwill.

### 2. *Confidentiality Provision*

The Agreement also includes a provision that prevents the non-disclosure of confidential information.  In relevant part, the Agreement provides that Jordan "agree[s] not to divulge any confidential information concerning the Company's business to any person at any time, whether during or after my employment with the Company except as required by the Company."  D. 33-3 at 4.  Maryland law allows businesses to use confidentiality agreements to prevent the disclosure of trade secrets to third parties and competitors.  MCS Servs., 2010 WL 3895380, at *5.  Jordan does not dispute the enforceability of the confidentiality provision, D. 31 at 3-12, and here the confidentiality provision on its terms covers all information "except which [Jordan] know[s] the company does not consider confidential" or has otherwise been "authorized to divulge to the general public," D. 33-3 at 4.  The Court, therefore, assumes the validity of the confidentiality provision.

### C.    The Non-Compete Provision is Severable from the Contract

As the non-compete provision is unenforceable, the Court must next consider the parties' arguments on how it should be struck from the Agreement.  Under Maryland law, "if a restrictive covenant is unnecessarily broad, a court may blue pencil or excise language to reduce the covenant's reach to reasonable limits."  Deutsche Post, 116 F. App'x at 439 (citing Tawney v.

Mut. Sys. of Md., 47 A.2d 372, 379 (1946)).  A court, however, using the blue pencil rule "may not rearrange or supplement the language of the restrictive covenant."  Deutsche Post, 116 F. App'x at 439 (citing Fowler v. Printers II, Inc., 598 A.2d 794, 802 (1991)).  As such, a court may only blue pencil a restrictive covenant if the offending provision is "neatly severable."  Aerotek, Inc. v. Obercian, 377 F. Supp. 3d 539, 548 (D. Md. 2019) (quoting Deutsche Post, 116 F. App'x at 439).  In doing so, a court "cannot supplement, rearrange, or otherwise rewrite language."  ImpactOffice, LLC, 2016 WL 8672916, at *6.  If the offending provision is a distinct divisible promise, the court may excise the offending provision, however if the offending promise is part of a single "indivisible promise," the court may not remedy the defect.  Aerotek, Inc. 377 F. Supp. 3d at 548.

In Aerotek, Inc. v. Obercian the court considered a non-compete provision that could be neatly severable.  Id. at 548-49.  There, the non-compete provision contained two distinct provisions:  "[t]he first prohibits direct or indirect engagement in the same area or type of work that an employee engaged in while at Aerotek.  The second prohibits an employee from working for a business that engages in the same type of work that the employee was engaged in while at Aerotek, regardless of the employee's role at that business."  Id. at 549.  In Aerotek, Inc., because the offending provision was distinct from the first, the court could neatly excise the offending provision while keeping the first provision.  Id.  Here, the non-compete provision is not so neatly severable.  There is no portion, like in Aerotek, Inc., of the provision that distinctly disallows Jordan from engaging in the same area of work that she did while at Sodexo.  Rather, the provision generally prevents Jordan from working in any capacity for any company that engaged in the Management Service Business, regardless of how that work relates to the work Jordan did at Sodexo.  D. 33-3 at 2-3.

The other sections of the Agreement stand on different footing in this regard.  The non-compete provision of the Agreement is confined to paragraph 2(ii) as defined in paragraph 1, the other provisions stand on their own and, therefore, remain.  Accordingly, the non-compete provision of the Agreement (paragraph 2(ii) as defined in paragraph 1) is struck.

### D. <u>Whether Jordan Breached the Agreement</u>

Sodexo relies upon two theories for its breach of contract claim.  First, it asserts that Jordan breached the non-compete provision of the Agreement and second that she breached the confidentiality restriction of the Agreement.  Because, as discussed above, the non-compete provision is unenforceable, Sodexo's claim for breach of that provision fails.  Sodexo's argument regarding the breach of the confidentiality provision first asserts that Jordan's retention of Sodexo information was itself a breach of the agreement and second identifies several instances in which Sodexo asserts that Jordan disclosed confidential information.

#### 1. *Retention of Confidential Information*

Jordan, during the course of litigation, learned that she had retained Sodexo-issued thumb drives, external storage devices, and hard-copy documents containing Sodexo information. D. 29 ¶ 41; D. 37 ¶ 41; D. 32 ¶ 29; D. 35 ¶ 29.  Upon this discovery, Jordan initiated a forensic review of her devices and produced sworn statements attesting that she had not accessed copied, shared or otherwise used this retained information aside from the purpose of identifying this information to turn over to counsel. D. 33-8 ¶¶ 5-9; D. 33-9 at 2, 4-7; D. 33-10 ¶¶ 1-10.

Sodexo argues that Jordan's retention of this information itself is a breach of the confidentiality provision of the Agreement.  D. 34 at 14.  Jordan disagrees by asserting that the Agreement only prohibits the disclosure of confidential information not the inadvertent retention of it.  D. 31 at 15.  By signing the Agreement, Jordan agreed "not to divulge any confidential

information concerning the Company's business to any person at any time . . . ."  D. 33-3 at 4.

The Agreement says nothing about retention of confidential information, D. 33-3 at 3-4.  In any

event, Sodexo argues, it need not rely on Jordan's retention of its information because it asserts

that the "record is replead with examples of [Jordan] in fact disclosing Sodexo information" in

breach of the confidentiality provision.  D. 34 at 14 (emphasis in original).

### 2.   *Disclosure of Alleged Confidential Information*

Sodexo points to several instances it asserts constitute disclosure of confidential

information.  D. 29 ¶¶ 54, 56-58.  Specifically, Sodexo identifies four instances it argues

demonstrates that Jordan disclosed confidential information.  D. 29 ¶¶ 54, 56-58.  The Agreement

defines confidential information as "all information concerning the Company's business, including

financial and business information as well as technical information . . . except information which

[Jordan] know[s] the company does not consider confidential or information which [Jordan has]

been duly authorized to divulge to the general public."  D. 33-3 at 4.

### a)   The November 2018 Email

First, Sodexo identifies a November 2018 instance in which Jordan told a Restaurant

Associates colleague that she was working on a Compass bid for a Sodexo client, she knew the

Sodexo employee who worked on the bid for Sodexo and suggested that Compass do a similar

project.  D. 29 ¶ 55 (citing D. 29-26).  None of this information appears to be confidential.  The

November 2018 email explains that the Sodexo project was publicized, D. 29-26 at 2, and Sodexo

does not appear to dispute that the client was featured as a case study on the Sodexo website, see

D. 45 ¶ 65.

a)      The State Street Account

Second, Sodexo identifies an email between Jordan and a Compass employee about State Street where Jordan states that she "led the retention effort" while at Sodexo.  D. 29-27 at 1. Sodexo appears to suggest that this indicates that Jordan shared Sodexo confidential information regarding Sodexo's previous efforts with State Street, but Sodexo does not point to evidence in the record that Jordan actually does disclose confidential information or what confidential information she allegedly disclosed.

a)      The National Zoo

The third instance Sodexo identifies is the email that Sodexo asserts that Jordan "sought out involvement in Restaurant Associates' efforts to secure a contract with the National Zoo, competing directly with Sodexo."   D. 29 ¶ 58 (citing D. 29-28).   Indeed, Sodexo cites to a December 2018 email chain where Jordan expresses interest in being part of the team to secure the contract with the National Zoo, but there is no indication in the email chain that Jordan actually disclosed any information regarding Sodexo in the course of expressing this interest.  At most this email chain supports Sodexo's argument that had the non-compete agreement been valid, Jordan breached that agreement by working for a competitor competing with Sodexo, but, there is no indication that Jordan, by expressing interest on working for the National Zoo account, disclosed any confidential information.

b)      Jordan's Email Identifying Several Sodexo "in Trouble" and "Must Win" Accounts

Finally, Sodexo also identifies an email from Jordan to a Restaurant Associates employee recommending they hire Jay DeGioia, a Sodexo employee.  D. 29-25.  Jordan states that Mr. DeGioia has been "a go to guy for accounts in trouble" and goes on to identify several Sodexo "in trouble" accounts.  D. 29-25 at 1.  The email further identifies accounts as "must win" accounts

for Sodexo.  D. 29-25 at 1.  This information—what specific accounts qualify as "must win" and "in trouble" to Sodexo—appears to qualify under the Agreement's definition of confidential information as it is information about Sodexo's business plan and goals.  Nevertheless, Jordan contends it does not qualify as confidential information because she knew the information not to qualify as confidential information and because some of that information was available through other sources.  D. 37-2 ¶ 9; D. 36 at 17.

Jordan's affidavit and attached documents raise at least a factual issue as to whether the information she disclosed to Sodexo is generally known and qualifies as confidential information.  Although Jordan contends that this information is otherwise publicly available, on this record, that fact is not clear.  Jordan identifies Mr. DeGioia's resume, recommendation letters and Sodexo's own Annual Report for the fiscal year of 2017 to argue that the information was otherwise publicly available.  D. 36 at 17.  These documents, however, do not establish that all information was available to the public and Jordan appears to concede that there is a triable issue on whether this information qualifies as "confidential information" under the Agreement.  For example, Jordan identifies Mr. DeGioia's resume as an instance where the information Jordan disclosed was otherwise available.  D. 37 ¶ 54.  The resume lists certain information about the accounts Jordan identified as "must win" or "in trouble" such as identifying one as "previously being a challenge" and another as a "signature account," D. 37-6 at 6-10.  As a preliminary matter, it is not clear that the resume actually discloses the same information Jordan did.  The fact that these accounts were listed as top accounts or previously challenging ones is distinct from information about "must win" or "in trouble" accounts.  It is not clear to this court that a "signature account" is necessarily a "must win account" and the fact that an account was previously a challenge does not necessarily indicate the information Jordan conveyed—that certain accounts are or were considered "in

trouble." D. 29-25 at 1.  Further, even assuming that the information provided in the resume and letters of recommendation is the same as that which Jordan provided, the information Jordan provided may be  nonetheless confidential.  It appears that the resume and recommendations were privately sent via email and not otherwise published publicly.  D. 37-6.  For at least these reasons, there is a dispute of fact as to whether this information allegedly disclosed by Jordan constitutes confidential information.

## VI.     Conclusion

For the foregoing reasons, the Court ALLOWS IN PART and DENIES IN PART Jordan's motion, D. 30, and DENIES Sodexo's motion, D. 27.  Jordan's motion is ALLOWED as to the alleged breach of the non-compete provision and alleged breaches of confidentiality provision except as to the allegations that Jordan violated the confidentiality provision by identifying Sodexo "must win" and "in trouble accounts" in her subsequent employment with Restaurant Associates.  As to this ground for the breach of contract claim, there remains a triable issue as to whether Jordan breached the Agreement and disclosed confidential information when she identified these "must win" and "in trouble accounts."

So Ordered.

/s/ Denise J. Casper
United States District Judge